Samuel M. BAUMGARTNER,
Jr., Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 53A05–0708–CR–463.

Court of Appeals of Indiana.

Aug. 15, 2008.

Clarence C. Frank, Monroe County Chief Deputy Public Defender, Bloomington, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Joby D. Jerrells, Deputy Attor-

ney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MATHIAS, Judge.

Samuel M. Baumgartner, Jr. ("Baumgartner") was convicted in Monroe Circuit Court of Class D felony performing sexual conduct in the presence of a minor. Baumgartner appeals and presents three issues, which we restate as:

I. Whether the trial court erred in denying Baumgartner's motion for dismissal pursuant to Indiana Criminal Rule 4(C).

II. Whether the statute defining the crime for which Baumgartner was convicted is unconstitutionally vague;

III. Whether the evidence is sufficient to support Baumgartner's conviction.

We affirm.

### Facts and Procedural History

At the time relevant to this appeal, Baumgartner was staying at the home of his girlfriend, Deborah Harden. Also living with Deborah were her daughter Brandy Harden and Brandy's two children, B.H. and C.H. The children, who were age two and three respectively, slept in a bedroom which was across the hall from their grandmother's bedroom, where Baumgartner slept. On the evening of November 16, 2005, Brandy put her children to bed. The children did not immediately go to sleep, causing their mother to turn off their television and scold them. However, the children continued to play and make noise. When Brandy went to check on the children yet again, she saw Baumgartner standing in the doorway of his bedroom, looking at the children and masturbating. Baumgartner was initially unaware that Brandy saw him. However, when he saw

her, he continued to masturbate. When later confronted about his behavior by Deborah, Baumgartner claimed that he was simply scratching himself.

On January 26, 2006, the State charged Baumgartner with child molesting and performing sexual conduct in the presence of a minor. The count of child molesting was dismissed on the State's motion on February 15, 2007. Also on February 15, Baumgartner moved to dismiss the remaining count under Criminal Rule 4(C). The trial court denied this motion, and a jury trial was held on June 11, 2007. Before trial, Baumgartner again moved for dismissal under Criminal Rule 4(C), and the trial court again denied this motion. The jury found Baumgartner guilty as charged, and the trial court sentenced him to two and one-half years incarceration. Baumgartner now appeals.

### I. Criminal Rule 4(C)

 Baumgartner claims that the trial court erred in denying the motions to dismiss the charges pursuant to Criminal Rule 4(C) that he made on the day of his trial. Criminal Rule 4(C) provides in relevant part:

No person shall be held on recognizance or otherwise to answer a criminal charge for a period in aggregate embracing more than one year from the date the criminal charge against such defendant is filed, or from the date of his arrest on such charge, whichever is later; except where a continuance was had on his motion, or the delay was caused by his act, or where there was not sufficient time to try him during such period because of congestion of the court calendar.

Our review of the trial court's ruling on a Criminal Rule 4(C) motion is de novo. *Kirby v. State*, 774 N.E.2d 523, 530 (Ind. Ct.App.2002), *trans. denied.*

Here, Baumgartner was arrested on February 13, 2006, and it is from this date that the one-year time limit of Criminal Rule 4(C) is calculated. *See Isaacs v. State*, 673 N.E.2d 757, 762 (Ind.1996) (one-year period of Criminal Rule 4(C) commences with the date of arrest or filing of charges, whichever is later). On June 30, 2006, Baumgartner agreed to a continuance of a hearing on his motion to suppress until August 28, 2006. Baumgartner now admits that this sixty-day continuance should also be charged to him for purposes of Criminal Rule 4(C).[1] Thus, when the Criminal Rule 4(C) "clock" started again on August 28, 2006, 137 days had elapsed, and the State had 228 days remaining to try Baumgartner. On January 5, 2007, the trial court set a trial date of April 9, 2007, which was within this period.[2]

On March 29, 2007, Baumgartner's trial counsel filed a motion to withdraw his appearance.[3] The trial court held a hearing on this motion on April 5, 2007, at which it granted the motion to withdraw and vacated the April 9, 2007 trial date. Baumgartner concedes that "[d]elays caused ... requests to change attorneys are the responsibility of the defendant."

*O'Neill v. State*, 597 N.E.2d 379, 384 (Ind. Ct.App.1992). However, he claims that any delay caused by the withdrawal of his trial counsel should not be charged to him because he "did not request new counsel. [Trial counsel] withdrew on his own accord." Br. of Appellant at 6.

■ If the defendant is not the cause of his counsel's resignation or withdrawal, then the defendant is not charged with the resulting delay. *Vermillion v. State*, 719 N.E.2d 1201, 1204 (Ind.1999). Although we have not been provided with the hearing on Baumgartner's counsel's motion to withdraw his appearance, it is apparent from the materials before us that Baumgartner was not without fault in the withdrawal of his trial counsel. The trial court described the situation as "clearly a breakdown in attorney-client relations." Tr. p. 146. The April 5, 2007 withdrawal of Baumgartner's trial counsel required vacation of the April 9, 2007 trial date, which was not reset until a pre-trial conference held on May 10, 2001, after Baumgartner had been appointed new counsel.[4] This delay is chargeable to Baumgartner. *See Isaacs*, 673 N.E.2d at 763 (delay caused by

1. Baumgartner admits that this delay should be charged to him, and thereby toll the one-year time limit of Criminal Rule 4(C) because, otherwise, the initial April 9, 2007 trial date set by the trial court would have been outside the one-year time limit. This would mean that the trial court, acting within the one-year time limit of Criminal Rule 4(C), set a trial date which was beyond the one-year time limit. And by failing to object under these circumstances, Baumgartner would have waived his rights under Criminal Rule 4(C). *See State ex rel. Bramley v. Tipton Circuit Court*, 835 N.E.2d 479, 481 (Ind.2005).

2. Baumgartner is incorrect in his assertion that any other motions made by him prior to the initial setting of the trial date could not cause a delay because "there was no trial date available to delay." Br. of Appellant at 5. In *Cook v. State*, 810 N.E.2d 1064, 1067 (Ind.

2004), our supreme court held that any delay caused by action taken by the defendant are chargeable to the defendant regardless of whether a trial date has been set.

3. On February 15, 2007, before the withdrawal of his counsel, Baumgartner moved for dismissal under Criminal Rule 4(C) which the trial court properly denied, because the one-year time limit had not yet run.

4. The chronological case summary ("CCS") indicates that after the withdraw of Baumgartner's counsel but before his newly-appointed counsel had filed an appearance, Baumgartner filed a motion for dismissal and discharge. Even if this motion were made under Criminal Rule 4(C), it was premature, as the one-year limit had not yet run as of this date.

withdrawal of defendant's counsel was chargeable to defendant because it was caused either by his act, which in turn caused his counsel's withdrawal, or was the result of an act by defendant's counsel); *cf. Young v. State,* 521 N.E.2d 671, 673 (Ind. 1988) (delay caused by withdrawal of defendant's counsel could not be charged to the defendant because counsel had resigned his position as a public defender, something that was totally unrelated to the behavior of the defendant).[5]

From August 28, 2006, when the Criminal Rule 4(C) "clock" restarted, until it stopped again on the March 29, 2006 motion to withdraw, 213 days passed. When this is added to the 137 days which were already charged against the one-year time period, a total of 350 days had elapsed for purposes of Criminal Rule 4(C), leaving the State fifteen days to bring Baumgartner to trial.

■ The delay caused by the withdrawal of Baumgartner's counsel lasted, at least, until the pre-trial conference was held on May 10, 2007, at which time the trial court set a trial date of May 21, 2007. Under *Isaacs,* Baumgartner is charged with the delay until May 21, 2007—the date to which his trial was reset. *See* 673 N.E.2d at 763.

However, the trial did not occur on May 21. Instead, on May 16, 2007, still within the one-year time limit, the State moved to continue the trial. That same day, the trial court granted this continuance and set the trial for June 11, 2007, which was outside the one-year time limit. Importantly, there is no indication that Baumgartner objected to this June 11, 2007 setting. Therefore, even though the trial court set a trial date which was outside

this time limit, this setting drew no objection from Baumgartner. As such, Baumgartner waived his right to a speedy trial under Criminal Rule 4(C). *State ex rel. Bramley v. Tipton Circuit Court,* 835 N.E.2d 479, 481 (Ind.2005) (citing *Vermillion,* 719 N.E.2d at 1204).

**II. Vagueness**

■ Baumgartner next claims that the statute defining the crime for which he was committed is unconstitutionally vague. We agree with the State that Baumgartner failed to preserve any claim to the constitutionality of the statute by failing to file a motion to dismiss raising the constitutional challenge.

Indiana Code section 35–34–1–6(a) (2004) provides that "[a]n indictment or information is defective when ... the statute defining the offense charged is unconstitutional or otherwise invalid." Further, Indiana Code section 35–34–1–4(a) (2004) provides that the trial court "may, upon motion of the defendant, dismiss the indictment or information upon any of the following grounds: ... (1) The indictment or information, or any count thereof, is defective under section 6 of this chapter." This statute further requires that such a motion "be made no later than ... twenty (20) days if the defendant is charged with a felony ... prior to the omnibus date." I.C. § 35–34–1–4(b)(1). A motion made after this time "may be summarily denied if based upon a ground specified in subdivision (a)(1)[.]" I.C. § 35–34–1–4(b). In *Payne v. State,* 484 N.E.2d 16, 18 (Ind. 1985), our supreme court noted these statutory provisions and held, "Generally, the failure to file a proper motion to dismiss raising the Constitutional challenge waives

---

5. Even Baumgartner's newly-appointed counsel had problems dealing with him. At a hearing at which these problems were explained to the trial court, Baumgartner's new

counsel explained that Baumgartner had accused his former counsel of being a "liar." Tr. p. 156.

the issue on appeal." *See also Rhinehardt v. State,* 477 N.E.2d 89, 93 (Ind.1985) (holding that defendant failed to preserve claim that statute was unconstitutionally vague where he failed to raise the issue prior to trial by a timely and proper motion to dismiss).

Still, some cases have considered challenges to the constitutionality of statutes even where the defendant failed to file a motion to dismiss. Notably, in *Morse v. State,* 593 N.E.2d 194, 197 (Ind.1992), the court addressed the defendant's challenge to the constitutionality of a statute even though the issue was raised for the first time in a pro se motion filed with the court by a defendant who was represented on appeal by counsel who did not raise the issue in the appellant's brief. Without mention of *Payne* or *Rhinehardt,* the court stated, "the constitutionality of a statute may be raised at any stage of the proceeding including raising the issue *sua sponte* by this Court." *Id. See also Vaughn v. State,* 782 N.E.2d 417, 420 (Ind.Ct.App. 2003) (citing *Morse* in deciding to address defendant's challenge to constitutionality of statute even though defendant filed no motion to dismiss and State did argue waiver on appeal), *trans. denied; Boyd v. State,* 889 N.E.2d 321, 323–24 (Ind.Ct.App. 2008) (following *Morse* and *Vaughn* in choosing to address on the merits defendant's claim that statute was unconstitutionally vague even though he did not file proper motion to dismiss and the State argued waiver on appeal), *trans. pending.*

◼ But, even if we were to consider Baumgartner's argument upon the merits, he would not prevail because his challenge to the statute as unconstitutionally vague fails. When a statute is challenged as unconstitutional, we presume the statute is constitutional. *Boyd,* 889 N.E.2d at 324 (citing *State v. Lombardo,* 738 N.E.2d 653, 655 (Ind.2000)). It is the defendant's burden to rebut this presumption, and we must resolve all reasonable doubts in favor of the statute's constitutionality. *Lombardo,* 738 N.E.2d at 655. A statute will not be held to be unconstitutionally vague if individuals of ordinary intelligence would comprehend it adequately to inform them of the proscribed conduct. *Id.* The statute need only inform the individual of the generally proscribed conduct; it need not list with exactitude each item of prohibited conduct. *Id.* A statute may also be impermissibly vague if its terms invite arbitrary or discriminatory enforcement. *Klein v. State,* 698 N.E.2d 296, 299 (Ind.1998). There must be something in the criminal statute in question to indicate where the line is to be drawn between trivial and substantial things, so that erratic arrests and convictions for trivial acts and omissions will not occur. *McIntosh v. State,* 638 N.E.2d 1269, 1276 (Ind.Ct.App.1994), *trans. denied.* However, a statute is void for vagueness only if it is vague as applied to the precise circumstances of the present case. *Boyd,* 889 N.E.2d at 324 (citing *Glover v. State,* 760 N.E.2d 1120, 1123 (Ind.Ct.App.2002), *trans. denied; Mallory v. State,* 563 N.E.2d 640, 645 (Ind.Ct.App. 1990)), *trans. denied.* The defendant is not at liberty to devise hypothetical situations which might demonstrate vagueness. *Mallory,* 563 N.E.2d at 645.

◼ Turning to the facts and circumstances of the present case, Baumgartner challenges the constitutionality of Indiana Code section 35–42–4–5(c) (2004), which provides:

A person eighteen (18) years of age or older who knowingly or intentionally:

(1) engages in sexual intercourse;

(2) engages in deviate sexual conduct; or

(3) touches or fondles the person's own body;

in the presence of a child less than fourteen (14) years of age with the intent to arouse or satisfy the sexual desires of the child or the older person commits performing sexual conduct in the presence of a minor, a Class D felony.

Baumgartner now claims that this statute is vague because it could criminalize the conduct of parents who engaged in sexual activity in their own bedroom if their infant was in a crib in the corner of the bedroom, or if one of their children accidentally walked in to their bedroom while they were engaged in sexual activity. We disagree.

Importantly, Baumgartner's argument is not addressed to the precise circumstances of the present case, but instead simply devises hypothetical situations which might demonstrate vagueness. As noted, this is not permitted. See *Mallory*, 563 N.E.2d at 645. Furthermore, we do not read the statute to prohibit the hypothetical conduct mentioned by Baumgartner.

In addition, the facts most favorable to the jury's verdict reveal that Baumgartner, while standing in a doorway which was across the hall from a bedroom where two small children were in bed, masturbated while looking at the children. A person of ordinary intelligence would have no difficulty in determining that such behavior was prohibited by the statute. See *Mallory*, 563 N.E.2d at 645. Therefore, Baumgartner's claim that this statute is unconstitutionally vague fails. See *Boyd*, 889 N.E.2d at 325 (rejecting defendant's claim that domestic battery statute was unconstitutionally vague).

### III. Sufficiency of the Evidence

 Baumgartner next claims that the evidence was insufficient to support his conviction. In reviewing a challenge to the sufficiency of the evidence, this court will neither reweigh the evidence nor judge witness credibility. *Kien v. State*, 782 N.E.2d 398, 407 (Ind.Ct.App.2003), *trans. denied*. Instead, we consider only the evidence which supports the conviction along with the reasonable inferences to be drawn therefrom. *Id.* We will affirm the conviction if there is substantial evidence of probative value from which a reasonable trier of fact could have drawn the conclusion that the defendant was guilty of the crime charged beyond a reasonable doubt. *Id.*

Baumgartner first challenges the sufficiency of the evidence by claiming that, even if we consider the facts favorable to the verdict, his conduct did not fall under the conduct proscribed by the statute. Specifically, he claims that he did not touch or fondle himself "in the presence" of a child because there was no evidence that the children were aware of Baumgartner's conduct. Baumgartner's claim has already been rejected by this court.

In *Glotzbach v. State*, 783 N.E.2d 1221 (Ind.Ct.App.2003), the defendant was seen masturbating in the stacks of a public library. He was ultimately convicted of public indecency, which was elevated to a Class D felony because it was committed " 'in or on a place where a child less than sixteen years (16) years of age is present.' " *Id.* at 1226 (quoting Ind.Code § 35-45-4-1(b)(1)).

Upon appeal, the defendant claimed that the State failed to establish that any children were "present" at the library because there was no evidence that any children [6] were in the immediate vicinity of where the incident occurred. The court first looked to a dictionary definition of the word "present," which defined the word as "being at the specified or understood

---

**6.** The individual who saw Glotzbach masturbating was over sixteen years of age.

place; at hand; in attendance." *Id.* at 1227 (quoting WEBSTER'S NEW WORLD DICTIONARY 1065 (3d ed.1988)). The court then concluded that "for children to be present within the meaning of [the pubic indecency statute] they only must be in the general area in the public place where the perpetrator is so that there is a reasonable prospect that children under sixteen might be exposed to the perpetrator's conduct." *Id.* Because children were in the library near where Glotzbach had been seen, the court held that children were "present" when the defendant had committed his crime and that "the State need not prove that [the children] actually witnessed the defendant's act." *Id.*

Baumgartner attempts to distinguish *Glotzbach* by claiming that the crime at issue there was committed in a public place, whereas he was convicted of conduct which occurred in a private home. Baumgartner argues that applying the *Glotzbach* holding to the present case would criminalize private sexual conduct. This is simply the same argument made in Baumgartner's challenge to the constitutionality of Indiana Code section 35–42–4–5(c), which we rejected above. We repeat that this statute criminalizes sexual conduct performed in the presence of a child under the age of fourteen when the conduct was done in the presence of such a child *with the intent to arouse or satisfy the sexual desires of either the defendant or the child.*

 We see no reason not to follow the holding in *Glotzbach.* The public indecency statute at issue there used the word "present," and the statute at issue here uses the phrase "in the presence of." The noun "presence" is defined as "the fact or condition of being present." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1793 (1976). The holding in *Glotzbach* is there-

fore directly on point with the present case. As in *Glotzbach,* the statute here does not require that the defendant's conduct be witnessed by the child or that the child be aware of the defendant's conduct. Instead, it simply requires that a child under the age of fourteen be at the place where the defendant's conduct occurs. *See Glotzbach,* 783 N.E.2d at 1227.

 This brings us to the final aspect of Baumgartner's challenge to the sufficiency of the evidence. Specifically, Baumgartner claims that the testimony of Brandy Harden, who witnessed his conduct, is "incredibly dubious." Application of the "incredible dubiosity" rule is limited to those situations where a sole witness presents inherently contradictory testimony which is equivocal or the result of coercion and there is a complete lack of circumstantial evidence of the defendant's guilt. *Majors v. State,* 748 N.E.2d 365, 367 (Ind.2001). Further, we will overturn a conviction based upon the incredible dubiosity rule when the testimony is so incredibly dubious or inherently improbable that it runs counter to human experience, and no reasonable person could believe it. *Kien,* 782 N.E.2d at 407.

Here, there is nothing in Brandy Harden's testimony which is inherently contradictory and there is no indication that her testimony was coerced. Moreover, there is nothing about her testimony which is so inherently improbable that it runs counter to human experience such that no reasonable person could believe it. She testified that she saw Baumgartner standing in the doorway of a bedroom which was across the hall from the bedroom where her two young children were in bed and that Baumgartner was masturbating while looking at the children. From this, the jury could have reasonable concluded that

Baumgartner[7] knowingly or intentionally touched or fondled his own body in the presence of a child less than fourteen years of age with the intent to arouse or satisfy his sexual desires.

### Conclusion

Baumgartner waived his rights under Criminal Rule 4(C) by failing to object to the trial court setting a trial date which was outside the one-year time limit provided by that rule. Indiana Code section 35–42–4–5 is not unconstitutionally vague, and the evidence is sufficient to support Baumgartner's conviction thereunder for performing sexual conduct in the presence of a minor.

Affirmed.

MAY, J., and VAIDIK, J., concur.

---

7. Baumgartner does not allege that he was under the age of eighteen, as required by Indiana Code 35–42–4–5(c).