**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**DARREN BEDWELL**
Marion County Public Defender
Appellate Division
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**BRIAN REITZ**
Deputy Attorney General
Indianapolis, Indiana



FILED

Feb 19 2013, 9:17 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| LUKE WHITE, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1206-CR-477 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Mark D. Stoner, Judge
Cause No. 49G06-1103-FB-15213

**February 19, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

## Case Summary

In a bar on New Year's Eve, a woman got mad at the waitress, knocked a tray of dishes out of her hand, and began shoving and punching her. Seconds later, the situation escalated into a bar fight involving several patrons. During the altercation, reveler Luke White lacerated one man's face with a small knife and smashed a beer bottle over another man's head. The State charged White with class B felony aggravated battery and class C felony battery and alleged him to be a habitual offender. At his trial, the jury heard testimony from numerous witnesses and viewed video footage from the bar owner's surveillance cameras. The jury convicted White of both counts of battery, and he admitted to being a habitual offender.

White now appeals, challenging the sufficiency of evidence to support his battery convictions and asking us to apply an incredible dubiosity standard of review. Finding the evidence sufficient and declining his invitation to change our well-established standard of review, we affirm.

## Facts and Procedural History

On New Year's Eve 2010, Marty's Lounge in Indianapolis was filled with patrons, most of whom had reserved their seats ahead of time. One large party included White, Brian Williams, Dawn White, Dana Cornwell ("Dana"), Dana's father, and others. At a nearby table sat Joshua Rather, Clint Cornewall ("Clint"), and Clint's wife. Rather was engaged to Wendy Lewis, the server who was waiting on both parties.

Around midnight, a disagreement ensued between Dana and Lewis when Dana attempted to take a chair from a table that Lewis was busing. Dana began making loud comments about Lewis and subsequently knocked a tray of dishes out of Lewis's hands and punched her in the face. The two women began fighting, whereupon Lewis's employer pulled Lewis from the area. When Clint and Rather came over to see what happened, more fisticuffs ensued. White struck Clint over the head with a beer bottle, and Clint fell to the ground. Clint heard the bottle break and had no recollection of anything that happened thereafter until an ambulance arrived. He suffers from residual headaches and memory loss.

Meanwhile, Dana and Williams got on top of Rather, and Dana repeatedly kicked Rather and tried to poke his eyes. Lewis came to Rather's aid and pulled Dana off her fiancé. A three-way fight ensued between Dana, Dawn, and Lewis, and White and Rather became engaged in a separate altercation. When Rather fell to the floor, he noticed White pulling an object from his pocket. Another patron yelled "knife" when she saw the "shiny" object in White's hand. Tr. at 303, 306, 309. Immediately thereafter, White cut Rather's face with the object. Rather later described the object as an "X-acto knife. Something with a short blade." *Id*. at 151. Then Williams held Rather down while White struck Rather. When Rather eventually crawled outside, his face was bleeding heavily. He required numerous stitches to treat lacerations to his face, left shoulder, left underarm, right forearm, and stomach, and he sustained permanent scarring on his face.

The State charged White with one count of class B felony aggravated battery for his attack against Rather, one count of class C felony battery for his attack against Clint, and a

3

habitual offender count. The State also charged Williams, Dana, and Dawn with various counts, and all four defendants were tried together. At trial, the State presented testimony from numerous eyewitnesses as well as the video surveillance camera footage provided by the owner of Marty's. The jury found White guilty of battery and aggravated battery, and he pled guilty to the habitual offender count. White now appeals his battery convictions. Additional facts will be provided as necessary.

**Discussion and Decision**

White challenges the sufficiency of evidence to support his convictions for battery and aggravated battery. Our standard of review for insufficiency of evidence claims is well-settled; we neither reweigh evidence nor judge witness credibility. *Rawson v.* State, 865 N.E.2d 1049, 1054 (Ind. Ct. App. 2007), *trans. denied*. Instead, we respect the jury's exclusive province to weigh conflicting evidence and consider only the evidence and reasonable inferences most favorable to the verdict to determine whether a reasonable trier of fact could conclude that the defendant was guilty beyond a reasonable doubt. *Id*. If there is substantial evidence of probative value to support the conviction, we will affirm. *Id*.

White was convicted of class B felony aggravated battery and class C felony battery. Indiana Code Section 35-42-2-1.5 states in pertinent part, "A person who knowingly or intentionally inflicts injury on a person that creates a substantial risk of death or causes … serious permanent disfigurement … commits aggravated battery, a Class B felony." Indiana Code Section 35-42-2-1(a)(3) states, "A person who knowingly or intentionally touches another person in a rude, insolent, or angry manner commits battery, … a Class C felony if it

4

results in serious bodily injury to any other person or if it is committed by means of a deadly weapon[.]"

White asks that we apply the standard of review used in incredible dubiosity cases. The incredible dubiosity rule is applied in those limited situations where a sole witness presents inherently contradictory testimony that is equivocal or the result of coercion and there is a complete lack of circumstantial evidence of the defendant's guilt. *Baumgartner v. State*, 891 N.E.2d 1131, 1138 (Ind. Ct. App. 2008). In reviewing such cases, we will overturn a conviction when the testimony is so incredibly dubious or inherently improbable that it runs counter to human experience, and no reasonable person could believe it. *Id*.

White specifically requests that we "expand the incredible dubiosity doctrine to include cases, like this one, where eyewitness testimony from several witnesses is contradicted by physical evidence—in this case, a video record of the altercation." Appellant's Br. at 8. He argues that the video shows that he struck Clint with a fist, not a beer bottle, and that Rather's laceration on his face came from broken dishes, not from a knife. He claims that we owe the jury no deference because we are "in as good a position as the trial court and jury to examine the surveillance video." *Id*. at 12.

Having viewed the surveillance video, the most that we can say is that we may be in as good a position as the jury, but only with respect to the contents of the video.[1] With respect to the quality of the video, it is blurry and choppy and does not clearly show such distinctions

---

[1] This assumes the constancy of variables such as how slow or fast it was played for the jury, the size of the screen, etc.

as White asserts between fist and bottle or between knife and broken dishes. The lack of colorization makes it difficult to discern which participant is which, leaving us to look merely for patterns such as plaids or stripes on the participants' clothing. At times, the bar crowd is so centralized in one area as to make it difficult to determine any specifics beyond the general upheaval in that area of the room. Moreover, even our ability to assess the video, such as it is, does not afford us firsthand access to the numerous eyewitnesses whose testimony[2] and demeanor the jury evaluated in comparison to the video.

Simply put, White's argument for invoking the incredible dubiosity rule is misplaced. The mere existence of a surveillance video does not render it dispositive and all other evidence incredibly dubious. The video was merely part of the evidence presented to the jury. The record is replete with eyewitness testimony as well as physical and circumstantial evidence of White's guilt.[3] The jury evaluated all the evidence and found him guilty. We decline his invitation to invade the jury's province. Based on the foregoing, we find the evidence sufficient to support White's convictions for battery and aggravated battery. Accordingly, we affirm.

Affirmed.

KIRSCH, J., and MATHIAS, J., concur.

---

[2] Eyewitnesses testified that they observed the use of the beer bottle and knife in the perpetration of the attacks against Clint and Rather respectively.

[3] To the extent that White attempts to equate his case with those in which no deference is owed because the trial court ruled on a paper record, his reliance is misplaced because, as even he admits, "the evidence in this case included testimony" from witnesses not before this Court. Appellant's Br. at 9.