## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT

Lisa M. Johnson
Brownsburg, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Paula J. Beller
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

James Wade,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

February 18, 2016

Court of Appeals Case No.
49A05-1505-CR-424

Appeal from the Marion Superior Court

The Honorable Grant W. Hawkins, Judge

Trial Court Cause No.
49G05-1404-MR-18355

**Mathias, Judge.**

[1] James Wade ("Wade") was convicted in Marion Superior Court of murder and ordered to serve a sixty-two-year sentence. Wade appeals and argues that his conviction is not supported by sufficient evidence.

[2] We affirm.

## Facts and Procedural History

[3] Wade and his girlfriend, Tracy Craig ("Craig"), often purchased drugs from Jazmine Trammel ("Jazmine"). Wade also allowed Jazmine to use his apartment to cook crack cocaine. In exchange, Jazmine would leave crack cocaine and hydrocodone for Wade.

[4] On March 23, 2014, Jazmine's body was found in a wooden chest next to a dumpster near Wade's apartment. Jazmine had been stabbed 86 times, and seven of the wounds were considered fatal. Jazmine's keys were the only personal possession found in the chest with her body. Her cell phone and identification were not found. Also, her sock and shoe were removed from her right foot. Jazmine was known to keep money in her sock, and she had approximately $3,000 in cash the morning she was murdered. Jazmine's car, which was parked in the parking lot of Wade's apartment complex, was searched, and the police did not find her identification, money, drugs, or her sock and shoe.

[5] After Jazmine's murder, the police distributed a flyer with a photograph of the wooden chest. Wade's sister saw a picture of the flier and believed it was the wooden chest that her mother had given to Wade. Wade's sister called Wade and told him that she had seen the chest on the news.

[6] The police obtained cell phone records that established several phone calls between Wade's and Jazmine's cell phones on March 22 and the morning of March 23, 2014. After the police determined that Wade's address was in the apartment complex where Jazmine was murdered, they obtained a search warrant for his apartment.

[7] Wade's apartment was searched on March 31, 2014. Jazmine's blood was found on various surfaces inside the apartment. Also, larger areas of discolored carpet in the living room appeared to be stains caused by bleach. The carpet was removed, and the carpet pad under the bleach stains was stained with blood later determined to be Jazmine's.

[8] Approximately two weeks after Jazmine was murdered and after his apartment was searched, Wade contacted the police and admitted that the chest was his. However, he told the police that he placed the chest outside of his apartment a few days prior to Jazmine's murder because he was moving and wanted to get rid of it.

[9] Wade admitted that he allowed Jazmine to use his apartment to cook crack cocaine on the date that she was murdered. He stated that he left his door unlocked for Jazmine and then he went to Craig's apartment. He claimed he returned to his apartment a few hours later, retrieved the drugs that Jazmine left for him, and then he returned to Craig's apartment.

[10] Wade was charged with Jazmine's murder on April 9, 2014. Wade's jury trial commenced on April 20, 2015. At trial, Wade argued that his medical conditions

rendered him physically incapable of murdering Jazmine and dragging the chest containing her body to the dumpster near his apartment. He also argued that it was more likely that his former girlfriend, Craig, murdered Jazmine.

The jury found Wade guilty as charged. The trial court ordered Wade to serve sixty-two years in the Department of Correction. Wade now appeals.

## Standard of Review

When the sufficiency of evidence is challenged, we neither reweigh the evidence nor judge the credibility of witnesses. *Chappell v. State*, 966 N.E.2d 124, 129 (Ind. Ct. App. 2012) (citing *McHenry v. State*, 820 N.E.2d 124, 126 (Ind. 2005)), *trans. denied*. Rather, we recognize the exclusive province of the trier of fact to weigh any conflicting evidence, and we consider only the probative evidence supporting the conviction and the reasonable inferences to be drawn therefrom. *Id*. If substantial evidence of probative value exists from which a reasonable trier of fact could have drawn the conclusion that the defendant was guilty of the crime charged beyond a reasonable doubt, then the verdict will not be disturbed. *Baumgartner v. State*, 891 N.E.2d 1131, 1137 (Ind. Ct. App. 2008). Finally, a conviction may be based upon circumstantial evidence alone. *Boggs v. State*, 928 N.E.2d 855, 864 (Ind. Ct. App. 2010), *trans. denied*.

## Discussion and Decision

Wade concedes that Jazmine was murdered inside his apartment but argues that the State failed to prove beyond a reasonable doubt that he committed the

murder. Specifically, Wade argues that the evidence presented at trial "merely tends to establish a suspicion of guilt," which is insufficient to sustain a conviction. Appellant's Br. at 10 (citing *Baker v. State*, 236 Ind. 55, 138 N.E.2d 641, 644 (1956). *See also A.M. v. State*, 981 N.E.2d 91, 94 (Ind. Ct. App. 2012) (stating that "it is generally not necessary that the evidence overcomes 'every reasonable hypothesis of innocence.' However, evidence that merely tends to establish suspicion of guilt, rather than proof of it, is insufficient to sustain a guilty verdict") (internal citations omitted).

[14] The State presented evidence that Wade allowed Jazmine to cook crack cocaine in his apartment in exchange for drugs as payment. Numerous phone calls were exchanged between Wade's cell phone and Jazmine's cell phone on March 22 and the morning of March 23, 2014. The phone calls ceased within the time frame of Jazmine's murder. Jazmine's body was placed in Wade's wooden chest and dragged to a nearby dumpster.

[15] Bleach was used to clean blood staining Wade's carpet, resulting in large areas of discoloration. Yet, when he spoke to the police, Wade claimed that when he allegedly returned to his apartment the morning Jazmine was murdered to pick up the drugs she left him, he did not notice the large stains on the carpet in his apartment.

[16] Jazmine's cousin testified that Jazmine carried money in her sock. When Jazmine's body was discovered, her right sock and shoe were missing. The

police did not find Jazmine's cell phone, the crack cocaine she made in Wade's apartment, money, or her identification on either her person or in her vehicle.

[17] Wade's sister became aware that the police were looking for information about Wade's wooden chest and mentioned it to him. However, Wade waited several days before speaking to the police and admitting the chest was his. He also claimed that he was moving from his apartment, but after Jazmine was murdered, he did not return to the apartment despite the fact that he still had clothing and possessions there, including furniture.

[18] Finally, Wade presented evidence of his medical conditions to the jury, which the jury weighed against evidence that he was able to walk significant distances, had no issues with performing tasks required for daily living, and that he used drugs including crack cocaine and hydrocodone. Craig also testified at trial as to where she and Wade were on March 22 and 23, as well as to the events that occurred on the day Jazmine was murdered. It was within the province of the jury to weigh Craig's testimony, and we will not reweigh the evidence on appeal.

[19] For all of these reasons, we conclude that the State presented sufficient evidence to prove that Wade murdered Jazmine Trammell.

[20] Affirmed.

Brown, J., concurs.

Kirsch, J., dissents.